**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| CARLOS VARGAS, an individual; | ) | 3:12-cv-00292-HDM-VPC |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| NEWMONT GOLD COMPANY, a Delaware Corporation; NEWMONT USA LIMITED, a Delaware Corporation; NEWMONT MINING CORPORATION, a Delaware Corporation; NEWMONT MIDAS HOLDINGS LIMITED, a Nevada Corporation; NEWMONT MIDAS OPERATIONS, INC., a Nevada Corporation; an DOES 1 through 100, inclusive. | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Before this court is Newmont USA Limited's ("defendant") motion to dismiss, or in the alternative, motion for summary judgment. ECF No. 18 and 37. Plaintiff has responded to the motions, ECF No. 25 and 38, and defendant has replied. ECF No. 26 and 41. The parties have filed supplemental briefs pursuant to the court's order of April 4, 2013. *See* ECF Nos. 37, 38, 41.

The plaintiff was an employee of Alliance Cooling Products ("Alliance"), a company hired by the defendant to "complete any and all repair work related to the cooling towers at Newmont's Maggie Creek Dam and Reservoir Facility." Decl. Richard Mathews, 2:3-5,

1

ECF No. 26-5; *see also* Service Agreement, Ex. 5 at 2, ECF No. 18-5

On June 2, 2010, the plaintiff and a co-worker were conducting inspection and repair on two cooling towers in the Maggie Creek Cooling Tower Cell #1. They were using fall protection gear and were working approximately twenty feet off the ground. Mine Citation, Ex. A at 16, ECF No. 25-1. Alliance had a fall protection program, and the plaintiff received training in the use of fall protection. Fall Protection Program, Ex. 1, ECF No. 26-2; Acknowledgment of Training, Ex. 3, ECF No. 26-4. Further, plaintiff received Alliance's *Injury Illness Prevention Plan* which provided a warning to workers to "be aware of what you are anchoring to!" Ex. 3 at 29, ECF No. 26-4. While performing the repair work plaintiff fell to the ground. Nearly half the cell "had structural failure and [had] caved in about six months prior to the accident and no corrective action was taken." Ex. A at 16. An accident report written by the Department of Labor's Mine Safety and Health Administration described what happened to the plaintiff:

> The failure created an overhang of cooling media and when the miners were working near this area the filter media gave way causing the miners to fall to the ground below. The [plaintiff] and partner were wearing fall protection that was secured to a 5"x5"x 30 feet fiber glass vertical support and when the cooling media fell it created enough force to break the support and pull the miners about 20 feet to the ground below.

*Id.*

As a result of the fall, plaintiff suffered "life threatening injuries and he became a quadriplegic." Compl. 4:17, ECF No. 1.

Following the accident, the plaintiff filed a workers compensation claim for the "injuries he sustained in the course of his employment with Alliance". *See* Workers Compensation Claim Form,

2

Ex. 9, ECF No. 18-9. The plaintiff was paid $67,816.32 in temporary disability benefits from June 3, 2010, to May 30, 2012. Ex. 10, ECF No. 18-10. Beginning on May 31, 2010, he received $652.08 a week in permanent disability benefits under the workers compensation provided by Alliance. Ex. 11, ECF No. 18-11.

On May 31, 2012, the plaintiff filed this action alleging his injuries were a result of the defendants' negligence. Compl. 4:18-22. The defendant filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure, 12(b)(6), or in the alternative a motion for summary judgment pursuant to Federal Rules of Civil Procedure 12(d) and 56.

The court held a hearing on the motion and granted the parties leave to conduct limited discovery and submit supplemental briefs on four issues: 1) whether there was a joint venture between defendant and Alliance; 2) whether the risk of injury was inherent in the work performed by the plaintiff; 3) whether the defendant deliberately and specifically intended to injure an employee; and 4) whether Alliance met the definition of a "principal contractor" under Nevada Revised Statute § 616A.285. Supplemental briefs and declarations have been filed. Accordingly, the court now addresses the motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If on a motion under Rule 12(b)(6). . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

3

The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In this case, as a defense to plaintiff's claim of negligence, the defendant asserts that the plaintiff's claims are barred by the exclusive remedy provision of the Nevada Industrial Insurance Act ("NIIA") pursuant to Nevada Revised Statutes § 616A.020(1) and § 616(B).612(4).

Employers who have "in service any person under contract for

4

hire" are considered "statutory employers." *Richards v. Republic Silver State Disposal, Inc.*, 122 Nev. 1213, 1218 (Nev. 2006). Statutory employers are required to provide workers compensation "for any personal injuries by accident sustained by an employee arising out of and in the course of the employment." Nev. Rev. Stat. § 616B.612(1). In exchange for providing such coverage, "the rights and remedies provided" in the Nevada Industrial Insurance Act for employees injured in the course of their employment "shall be exclusive." Nev. Rev. Stat. § 616A.020(1). Further, employers who provide such coverage are "relieved from other liability for recovery of damages or other compensation for those personal injuries" sustained by their employees. Nev. Rev. Stat. § 616B.612(4).

Principal contractors are normally considered statutory employers under the NIIA, which defines principal contractors as: "a person who 1) Coordinates all the work on an entire project; 2) Contracts to complete an entire project; 3) Contracts for the services of any subcontractor or independent contractor; or 4) Is responsible for payment to any contracted subcontractors or independent contractors." Nev. Rev. Stat. § 616A.285.

A contractor licensed under NRS Chapter 624 is required to provide workers compensation. If a contractor meets the definition of a principal contractor and carries an NRS Chapter 624 license, it is a licensed principal contractor that is "always deemed a statutory employer" and, thus, is eligible for immunity. *Richards*, 122 Nev. at 1218.

If a property owner hires a licensed principal contractor to complete a job on its property, both the property owner and the

5

licensed principal contractor may be immune from liability under the NIIA. *See Harris v. Rio Hotel & Casino Inc.*, 117 Nev. 482 (Nev. 2001) (holding that a property owner that hires a licensed principal contractor "stands in the shoes" of its contractor for purposes of NIIA liability).

The licensed principal contractor, and the property owner, are immune from liability under the NIIA if the injury at issue "ar[ose] out of and in the course of the employment." Nev. Rev. Stat. § 616B.612(1); *see also Richards,* 122 Nev. at 1217; *Wood*, 121 Nev. at 724. If the injury occurred at the place of employment during the hours of employment it is considered to have occurred within the course of employment. *See Wood*, 121 Nev. at 734. An injury is considered to have arisen out of the employment if there is a "causal connection between the employee's injury and the nature of the work or workplace." *Id*.  That is, the "risk [was] inherent to the environment or conditions under which that licensed work was being performed." *Richards*, 122 Nev. at 1224.

In *Richards v. Republic Silver State Disposal*, the Nevada Supreme Court held that the property owner, Republic Silver State Disposal, was immune from liability when an employee of Commercial Consulting, a licensed principal contractor, slipped off a ladder during the installation of a swamp cooler. 122 Nev. at 1225. The court found that falling off a ladder that was used to access the roof on which the swamp cooler was located was a risk inherent in the work the plaintiff was hired to do. *See id.* The property owner hired a licensed principal contractor, and the injury occurred in the course of – and arose from – the work the plaintiff was hired to do by the principal contractor. Therefore, the court found that

6

"the property owner's immunity, which stems from the fact that it hired a licensed principal contractor to complete work, applies to bar claims arising out of risks associated with that licensed work." *Id.* at 1225. Thus, the property owner was immune from liability under the NIIA.

Here, it is undisputed that Alliance held a license under NRS 624 and provided the plaintiff and its other employees with workers compensation benefits. License, Ex. 6, ECF No. 18-6;  Ex. 11, ECF No. 18-11. The undisputed evidence establishes that Alliance was a principal contractor. Alliance was hired by the defendant to "complete any and all repair work related to the cooling towers at Newmont's Maggie Creek Dam and Reservoir Facility." Decl. Richard Mathews, 2:3-5, ECF No. 26-5; *see also* Service Agreement, Ex 5 at 2, ECF No. 18-5. Therefore Newmont "stands in the shoes" of Alliance for purposes of NIIA liability. *See Harris*, 117 Nev. at 484.

In addition, the plaintiff's injuries "arose out of" and were "in the course of the employment."  Nev. Rev. Stat. § 616B.612(1). The undisputed evidence is that the injury occurred within the course of the plaintiff's employment. When he fell, the plaintiff was conducting the repairs he was hired to do during work hours.

The injury also arose out of his employment. The risk of falling, even when the fall protection devices were anchored to a support, is an inherent risk in the industry. This is evidenced by the undisputed facts that the plaintiff was thoroughly trained in fall protection, Alliance had fall protection policies in place, and the plaintiff had fall protection gear on at the time of the accident. *See* Fall Protection Program, Ex. 1; Acknowledgment of

7

Training, Ex. 3. Importantly, in the safety manual Alliance provided to its employees, there was a warning to workers to "be aware of what you are anchoring to!" Ex. 3 at 29.  This establishes that falling and anchoring fall protection to an unstable support was a risk that Alliance was aware of and warned its employees about and, therefore, was a risk inherent in the work Alliance and its employees performed.

Finally there are no facts that support a finding of a joint venture between defendant and Alliance or that the defendant deliberately and specifically intended to injure the plaintiff.

Even when viewed in a light most favorable to the plaintiff, the material undisputed facts establish that the defendant hired a licensed principal contractor, Alliance, that plaintiff was injured during work hours performing work he was hired to perform, and that the plaintiff's injuries and claims arose out of a risk directly associated with the licensed work Alliance was hired to perform. Defendant is therefore entitled to immunity under the NIIA, and plaintiff's claims are barred.  The defendant's motion for summary judgment (#18 & #37) is therefore granted.

**IT IS SO ORDERED.**

DATED: This 28th day of August, 2013.

_____
UNITED STATES DISTRICT JUDGE